Steven Louk,
**Respondent/Petitioner Below, Petitioner**

**FILED**
**February 21, 2017**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 16-0321** (Kanawha County 15-AA-124)

**The Board of Education of the County of Braxton,**
**Petitioner/Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Steven Louk, by counsel John Everett Roush, appeals the Circuit Court of Kanawha County's February 29, 2016, order reversing the decision of the West Virginia Public Employees Grievance Board ("the Board"). Respondent Board of Education of the County of Braxton, by counsel Richard S. Boothby and Rebecca M. Tinder, filed a response in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in reversing the Board's decision because he completed one year of acceptable employment and therefore was entitled to certain protections pursuant to West Virginia Code § 18A-2-6.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

From 1994 through the 2012-13 school year, petitioner was employed as a school bus driver for the Preston County Board of Education. Following the 2012-13 school year, petitioner moved to Braxton County and was hired by the Braxton County Board of Education as a school bus driver for the 2013-14 school year. In April of 2014, petitioner left his school bus unattended while the engine was running with students on board.

On May 5, 2014, the Braxton County Superintendent David Dilly notified petitioner that the April 28, 2014, incident had been reported. Mr. Dilly indicated that petitioner's first year of employment was "unsatisfactory" and that his behavior was "totally unacceptable and dangerous to the students in Braxton County." Furthermore, Mr. Dilly referred the incident to the State Superintendent of Schools for further investigation. Ultimately, petitioner was suspended without pay for the remainder of the 2013-14 school year and Mr. Dilly recommended to the Braxton County Board of Education ("the BOE") that petitioner's employment be terminated for gross

1

misconduct. Several days later, the BOE approved Mr. Dilly's recommendation to suspend petitioner without pay for the remainder of the 2013-14 school year.[1]

Sometime in 2014, the BOE hired petitioner as a school bus operator for the 2014-15 school year.[2] However, Mr. Dilly notified petitioner that he had not received petitioner's bus operator certification for the 2014-15 school year. Mr. Dilly was later notified that petitioner's certification to operate a school bus was pending because the Executive Director of Transportation received a report concerning petitioner's conduct in May of 2014.[3] Thereafter, petitioner was informed that he was certified to be a school bus operator for the remainder of the 2014-15 school year. During the BOE's April 9, 2015, meeting, they chose not to renew petitioner's contract for the 2015-16 school year. The following day, Mr. Dilly notified petitioner by letter that he was not included on the probationary employment list for the 2015-16 school year. Subsequently, petitioner requested a hearing on the nonrenewal of his contract.

In May of 2015, petitioner requested a Level 3 hearing alleging that the BOE failed to renew his employment contract in bad faith. Specifically, petitioner asserted that (1) he obtained continuing contract status and was not given the opportunity to be heard pursuant to West Virginia Code § 18A-2-6; (2) the nonrenewal was not based on upon an evaluation pursuant to West Virginia Code § 18A-2-12a; (3) it was arbitrary and capricious to be subjected to two disciplinary actions based upon the same incident; (4) he was not guilty of any conduct worthy of termination; and (5) the nonrenewal of his contract was in retaliation for his filing of a grievance during the 2013-14 school year.

In August of 2015, a Level 3 hearing was held at which the Administrative Law Judge ("ALJ") granted in part, and denied in part, petitioner's grievance. In reinstating petitioner as a bus operator, the ALJ held that petitioner's employment for the 2013-14 school year was "acceptable" because (1) petitioner worked 145 days of the 2013-14 school year before being suspended; (2) the BOE rejected Mr. Dilly's recommendation to terminate petitioner's contract; (3) and despite his suspension, petitioner was employed as a bus operator for the 2014-15 school year. As a result, petitioner was entitled to continuing contract status for the 2014-15 school year and the BOE's nonrenewal of his 2015-16 contract failed to comply with West Virginia Code § 18A-2-6. The ALJ also order respondent to pay petitioner back pay to be offset by $875.

The Board appealed the ALJ's decision to the circuit court arguing that petitioner did not complete one year of acceptable employment and thus, was not entitled to the notice provisions

_____

[1]Thereafter, petitioner requested a Level 3 hearing. The parties successfully mediated this grievance on August 26, 2014, wherein the Board paid petitioner $1,750.

[2]The parties dispute whether petitioner was employed under a continuing or probationary contract.

[3]Petitioner filed a petition for writ of mandamus directing the West Virginia Board of Education to issue a decision on whether to issue or deny petitioner's bus operator certification. The parties agreed to dismiss the petition for writ of mandamus because petitioner was granted his bus operator certification after completing eight hours of remedial training.

found in West Virginia Code § 18A-2-6. Petitioner also filed an appeal challenging the ALJ's decision alleging that the ALJ erred in offsetting his back pay by $875.[4] The parties agreed to consolidate the appeals. By order entered on February 29, 2016, the circuit court concluded that the Grievance Board's decision was clearly wrong and accordingly reversed the Grievance Board's decision. The circuit court found that petitioner was not entitled to the protections of West Virginia Code § 18A-2-6 because he did not complete one year of "acceptable" employment. The circuit court reasoned that the Grievance Board disregarded the BOE's interpretation of "acceptable employment." Furthermore, applying the ordinary meaning of "complete" and "acceptable," petitioner's suspension during the 2013-14 illustrated that he "did not 'finish' the 2013-14 school year, and his suspension illustrates that his performance was not 'tolerated or allowed.'" This appeal followed.

The Court has previously established the following standard of review:

> "Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed *de novo*." Syllabus Point 1, *Cahill v. Mercer County Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000).

Syl. Pt. 1, *Darby v. Kanawha Cty. Bd. of Educ.*, 227 W.Va. 525, 711 S.E.2d 595 (2011). Further, we have held that

> "[a] final order of the hearing examiner for the West Virginia [Public] Employees Grievance Board, made pursuant to W. Va.Code, [6C–2–1], et seq. [ ], and based upon findings of fact, should not be reversed unless clearly wrong." Syl. pt. 1, *Randolph Cnty. Bd. of Educ. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989).

Syl. Pt. 3, *Armstrong v. W.Va. Div. of Culture and History*, 229 W.Va. 538, 729 S.E.2d 860 (2012). Upon our review, the Court finds no error in the circuit court orders which reversed the BOE's decision below.

On appeal to this Court, petitioner alleges that the circuit court erred in finding that he did not complete one year of acceptable service and that he was not reprimanded twice for the same conduct. The Court, however, does not agree. Upon our review and consideration of the circuit court's order, the parties' arguments, and the record submitted on appeal, we find no error by the circuit court. Indeed, the circuit court's order includes well-reasoned findings and conclusions as

---

[4]Petitioner was employed as a truck driver at the rate of $12.50 per hour at 70 hours per week. Thus petitioner made $875 per week as a truck driver.

to the assignments of error raised on appeal. Given our conclusion that the circuit court's order and the record before us reflect no clear error, we hereby adopt and incorporate the circuit court's findings and conclusions as they relate to petitioner's assignments of error raised herein and direct the Clerk to attach a copy of the circuit court's February 29, 2016, "Final Order" to this memorandum decision.

For the foregoing reasons, the circuit court's February 29, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**: February 21, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISQUALIFIED:**

Justice Margaret L. Workman

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

THE BOARD OF EDUCATION OF THE
COUNTY OF BRAXTON,
    Petitioner,

v.

STEVEN LOUK,
    Respondent.

AND

STEVEN LOUK,
    Petitioner,

v.

THE BOARD OF EDUCATION OF THE
COUNTY OF BRAXTON,
    Respondent.

Civil Action No. 15-AA-124
Judge Louis H. Bloom

*15-AA-124 consolidated in*

## FINAL ORDER

Pending before the Court are a *Petition of Appeal* (*Louk Petition*) filed by Steven Louk, by counsel, John Everett Roush, on November 16, 2015 (originally filed in Civil Action 15-AA-126), and a *Petition of Appeal* (*Board Petition*) filed by the Braxton County Board of Education (Board), by counsel, Richard S. Boothby, on November 12, 2015. This Court consolidated these matters on December 30, 2015. The parties appeal a *Decision* entered by the West Virginia Public Employees Grievance Board (Grievance Board) on October 15, 2015. The Grievance Board concluded, in pertinent part, that the Board improperly non-renewed Mr. Louk's contract because he was entitled to continuing contract status. The Grievance Board offset Mr. Louk's back wages to account for him making $12.50 per hour at 70 hours per week as a truck driver.

1

## FINDINGS OF FACT

1. Mr. Louk worked for the Preston County Board of Education as a bus operator from October 24, 1994, through the end of the 2012–2013 school year. Near the end of the 2012–2013 school year, Mr. Louk resigned as a bus operator for Preston County and moved to Braxton County.[1]

2. The Board hired Mr. Louk as a regularly employed bus operator on September 24, 2013. Mr. Louk worked 145 out of 200 days during the 2013–2014 school year.[2]

3. On April 28, 2014, Mr. Louk left his bus with the engine running and children aboard to speak with a principal who had approached the bus.[3]

4. On May 5, 2014, Superintendent David Dilly suspended Mr. Louk without pay for this April 28, 2014, incident. Mr. Dilly sent Mr. Louk a letter, stating in pertinent part, "This is your first year of employment with the Braxton County Board of Education. Your evaluation for this school year is unsatisfactory."[4] Mr. Dilly stated that the matter would be referred to the State Superintendent of Schools for further investigation.[5]

5. On May 12, 2014, the Board held a meeting and voted to suspend Mr. Louk to the end of his 2013–2014 school year employment term, but declined to accept Superintendent Dilly's recommendation to terminate Mr. Louk's contract.

6. Mr. Louk thereafter filed a grievance challenging his suspension. The grievance was settled by the parties on August 29, 2014. As part of the settlement agreement, Mr. Louk's suspension for his actions on April 28, 2014, was left in place.[6]

---

[1] *See* Grievant's ex. 1.
[2] Grievant's ex. 3.
[3] Louk Test., Grievance Bd. Hr'g 87–88, Aug. 11, 2015.
[4] Grievant's ex. 7.
[5] *Id.*
[6] Grievant's ex. 9.

2

7. After Mr. Louk's suspension expired, Mr. Louk went back to work as a bus operator for the Board. The parties dispute whether, at this time, he was employed under a continuing or probationary contract.

8. Mr. Louk's bus operator certification expired on or about June 30, 2014, and was not renewed at the beginning of the 2014–2015 school year. The Board again suspended Mr. Louk without pay because Mr. Louk lacked the appropriate certification. Mr. Louk's certification expired because he failed to complete a survey following a test. Upon learning of the oversight, Mr. Louk completed the survey yet still did not receive his certification.[7]

9. In December 2014, Mr. Louk filed a petition for a writ of mandamus to compel the West Virginia Department of Education to issue a decision on his reapplication for certification as a school bus operator.[8]

10. In early February 2015, the West Virginia Department of Education agreed to grant Mr. Louk recertification upon his completion of an eight-hour retraining session.[9]

11. The State Superintendent of Schools, Dr. Michael Martirano, sent a letter to Mr. Louk on February 4, 2015, explaining that he had not been recertified at the beginning of the 2014–2015 school year because of Mr. Louk's conduct on April 28, 2014. In the letter, Dr. Martirano asserts that his office conducted an investigation into the April 28, 2014, incident and found that Mr. Louk committed the following policy violations: on April 28, 2014, Mr. Louk failed to notify the bus garage or make any calls when two elementary students re-alighted the school bus when no one answered the door at their home; on April 28, 2014, Mr. Louk reloaded two elementary students on the school bus and independently determined that he would leave the students at Frametown Elementary School; on April 28, 2014, he consistently drove at least 5 mph above

---

[7] Louk Test., Grievance Bd. Hr'g 96, Aug. 11, 2015.
[8] Grievant's ex. 10.
[9] Louk Test., Grievance Bd. Hr'g 98, Aug. 11, 2015.

the speed limit and tended to drive too fast for the narrow roads where two vehicles could not pass without one pulling over; and, on April 29, 2014, he failed to turn off the ignition when loading students at school, even when not leaving the driver's compartment. Dr. Martirano's letter also states:

> Your failure to contact the bus garage about the two students and your leaving the bus running and the students unattended on April 28, 2014, constituted a single violation of sound safety practices and regulations while operating a school bus, which threatened the safety of student passengers. This justifies the denial of a certification pursuant to § 19.1.10 of the Transportation Manual. I am not presently denying your certification, however, because your ability to drive a school bus was effectively suspended between May 5, 2014, and June 30, 2014. I will consider this time period to also be a suspension of your certificate. I deem this to be appropriate discipline with respect to your certificate instead of denying your renewal outright because: (1) Your purpose in leaving the bus was to escort the two students to a place where they could wait for a parent to be located; (2) You did not testify falsely or deny your conduct, although you minimized its seriousness; (3) You were addressing the deficiencies found in the March 21, 2014, evaluation as evidenced by the bus video.[10]

12. On March 15, 2015, Mr. Louk completed the eight-hour training session necessary for his certification.[11]

13. In April 2015, Superintendent Dilly decided not to include Mr. Louk's name on the list of probationary employees provided to the Board for renewal because of the results of the Department of Education's investigation of the April 28, 2014, incident. Thus, at the Board's meeting on April 9, 2015, the Board did not renew Mr. Louk's contract for the 2015–2016 school year.[12]

---

[10] Board's Ex. 6.
[11] McGuire Test., Grievance Bd. Hr'g 34:20–22, Aug. 11, 2015.
[12] Resp't ex. 3.

4

14. As of April 9, 2015, Mr. Louk had not worked one day for the Board during the 2014–2015 school year. Consequently, Mr. Louk had also not been given an evaluation during that school year.[13]

15. On April 10, 2015, Mr. Dilly sent Mr. Louk a letter stating that his contract would not be renewed for the 2015–2016 school year.[14]

16. On April 20, 2015, Mr. Louk requested a hearing on the nonrenewal of his contract.[15]

17. On April 20, 2015, Mr. Louk learned from the transportation director that his certification had been renewed by the State.[16]

18. The Board hearing on Mr. Louk's nonrenewal was conducted on April 28, 2015. At the hearing, the Board indicated that its decision to not renew Mr. Louk's contract was based on the April 28, 2014, incident.[17]

19. Superintendent Dilly informed Mr. Louk of the nonrenewal by letter dated April 30, 2015.[18]

20. During Mr. Louk's suspension, he worked as a truck driver for another employer, earning $12.50 per hour and working approximately 70 hours per week.

## STANDARD OF REVIEW

Review of a decision of the Grievance Board is governed by W.Va. Code § 6C-2-5(b), which provides the grounds upon which a decision may be reviewed for error. Specifically, W.Va. Code § 6C-2-5(b) states as follows:

> A party may appeal the decision of the administrative law judge on the grounds that the decision:

---

[13] Louk Test., Grievance Bd. Hr'g 100–01, Aug. 11, 2015.

[14] Grievant's ex. 4.

[15] Resp't ex. 4.

[16] Louk Test., Grievance Bd Hr'g 100, Aug. 11, 2015.

[17] Grievant's ex. 7, 8.

[18] Grievant's ex. 5.

5

(1) Is contrary to law or a lawfully adopted rule or written policy of the employer;

(2) Exceeds the administrative law judge's statutory authority;

(3) Is the result of fraud or deceit;

(4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

More particularly, review of grievance rulings involves a combination of deferential and plenary review. A reviewing court is obligated to give deference to factual findings rendered by the Board, while conclusions of law and application of law to the facts are reviewed *de novo*.[19] Further, the "clearly wrong" and "arbitrary and capricious" standards of review are deferential ones, which presume that an administrative agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis.[20]

## DISCUSSION & CONCLUSIONS OF LAW

21. On appeal, Mr. Louk alleges that the Grievance Board erred when it offset his back wages to account for him making $12.50 per hour at 70 hours per week as a truck driver. The Board alleges that the Grievance Board erred when it determined that Mr. Louk should be reinstated.

### *Reinstatement*

22. Under W. Va. Code § 18A-2-6, an employee who has continuing contract status with one county board of education and transitions to another county the following year gains continuing contract status if he completes a year of acceptable employment:

> [A] service personnel employee holding continuing contract status with one county shall be granted continuing contract status with any other county **upon completion of one year of acceptable employment** if such employment is during the next succeeding

---

[19] Syl. pt. 1, *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000).

[20] *Webb v. W. Va. Bd. of Med.*, 212 W. Va. 149, 155, 569 S.E.2d 225, 231 (2002) (Per Curiam) (internal quotation marks and citations omitted).

school year or immediately following an approved leave of absence extending no more than one year.[21]

The term "acceptable employment" is not defined in West Virginia law. An employee who does not complete a year of acceptable employment is considered probationary. A board of education must follow the procedures contained in W. Va. Code § 18A-2-6 when terminating a continuing contract, but not a probationary contract:

> The continuing contract of any such employee shall remain in full force and effect except as modified by mutual consent of the school board and the employee, unless and until terminated with written notice, stating cause or causes, to the employee, by a majority vote of the full membership of the board before March 1 of the then current year, or by written resignation of the employee on or before that date. The affected employee has the right of a hearing before the board, if requested, before final action is taken by the board upon the termination of such employment.

23. Here, the parties do not dispute that Mr. Louk was denied the procedures contained in said code section. Rather, the parties dispute whether Mr. Louk completed a year of acceptable employment during the 2013–2014 school year. The Board asserts that its interpretation of "acceptable" and its decision that Mr. Louk did not complete one year of "acceptable" employment are reasonable and therefore entitled to deference. Specifically, the Board asserts that, because Mr. Louk's employment during the 2013–2014 school year was not acceptable, Mr. Louk was a probationary employee for the following 2014–2015 school year. And, because Mr. Louk was a probationary employee for the 2014–2015 school year, the Board was not required to afford Mr. Louk the contract termination procedures for continuing contracts.

24. In determining whether Mr. Louk was a probationary employee for the 2014–2015 school year, the Court must first assess whether Mr. Louk completed one year of "acceptable" employment for the 2013–2014 school year in the context of W. Va. Code § 18A-2-6.

---

[21] Emphasis added.

7

25. Generally, the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use.[22] Undefined words and terms used in a legislative enactment will be given their common, ordinary, and accepted meaning.[23] Specifically, where a statutory term is left undefined by the Legislature, and is otherwise silent about the issue at hand, the question for a reviewing court is whether the school board's interpretation of that term is based on a permissible construction of the statute.[24] School personnel regulations and laws are to be strictly construed in favor of the employee.[25]

26. Under West Virginia law, "[a]n inquiring court—even a court empowered to conduct *de novo* review—must examine a regulatory interpretation of a statute by standards that include appropriate deference to agency expertise and discretion."[26] The United States Supreme Court opinion, *Chevron USA v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), lays out the analytical framework for determining whether deference should be afforded to an agency's interpretation of a statute. To determine appropriate deference, the WV Supreme Court has reiterated the *Chevron*'s framework as follows:

> [To] apply the standards set out by . . . *Chevron* . . . , we first ask whether the Legislature has directly spoken to the precise legal question at issue. If the intention of the Legislature is clear, that is the end of the matter. If it is not, we may not simply impose our own construction of the statute. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the [agency's interpretation] is based on a permissible construction of the statute.[27]

---

[22] Syl. pt. 4, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

[23] Syl. pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W. Va. 525, 336 S.E.2d 171 (1984).

[24] *Keatley v. Mercer Cnty. Bd. of Educ.*, 200 W. Va. 487, 491–92, 490 S.E.2d 306, 210–11 (1997) (citing *Chevron U.S.A, Inc. v. Natural Res. Def. Council, Inc.*, 467 837, 843 (1984)).

[25] Syl. pt. 1, *Morgan v. Pizzino*, 163 W. Va. 454, 256 S.E.2d 592 (1979).

[26] *Appalachian Power Co. v. State Tax Dept. of W. Va.*, 195 W. Va. 573, 582, 466 S.E.2d 424, 433 (1995).

[27] *Id.* (internal citations omitted).

8

27. Here, the parties agree that "acceptable" in the context of W. Va. Code § 18A-2-6 is not defined in West Virginia law. Likewise, the Court finds the intention of the Legislature unclear on what constitutes "acceptable." The Court therefore finds that the absent definition of the term "acceptable" in W. Va. Code § 18A-2-6 evinces the Legislature's intent for county boards of education to exercise discretion on the issue.[28] Thus, the Court turns its attention to whether the Board's interpretation is based on a permissible construction of the statute.

28. Under West Virginia law, "County boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious."[29]

29. Here, addressing whether Mr. Louk's contract was probationary and whether Mr. Louk completed a year of acceptable employment, the Grievance Board found:

> Given . . . the fact that Grievant worked 145 days during the 2013–2014 school year before being suspended the last two months of that year, that the Respondent Board specifically rejected Superintendent Dilly's recommendation for termination in May 2014, and that the Respondent Board employed Grievant as a bus operator for the 2014–2015 school year despite the suspension that had just ended, it appears that Grievant's employment for the 2013–2014 school year was acceptable. Clearly, Grievant had some problems toward the end of the 2013–2014 school year, but Respondent did not find them significant enough to terminate his employment, or to decline to employ him for the very next school year. Further, there has been no suggestion that Respondent informed Grievant that his contract for the 2014–2015 would be probationary because of his prior suspension, or conduct. The evidence presented suggests only that Respondent gave Grievant an employment contract as a regular bus operator for the 2014–2015 school year without any caveats. Accordingly, Grievant was entitled to continuing contract status for the 2014–2015 school year pursuant to West Virginia Code § 18A-2-6. Respondent's

---

[28] *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984); *Keatley v. Mercer Cnty. Bd. of Educ.*, 200 W. Va. 487, 491, 490 S.E.2d 306, 210 (1997).

[29] Syl. pt. 3, *Dillon v. Bd. of Educ. of Wyoming Cnty.*, 177 W. Va. 145, 351 S.E.2d 58 (1986).

9

> non-renewal of Grievant's contract in April 2015 did not comply with the contract termination requirements of West Virginia Code § 18A-2-6. Therefore, non-renewal of Grievant's contract in April 2015 is invalid. Given this, there is no need to address the Respondent's reasoning for the non-renewal.[30]

The Grievance Board's reasoning disregards the Board's interpretation of "acceptable employment" and does not address the Board's substantial discretion in determining what "acceptable employment" is.

30. The Court finds the Board's construction of the statute permissible. Mr. Louk did not complete his first year with the Board; he was suspended without pay for the last two months of his first year in Braxton County because he left his bus running and occupied with students. Mr. Louk asserts on appeal that the Court should consider the New Oxford American Dictionary definitions of "complete" and "acceptable." "Complete" is defined as "Having run its full course; finished." "Acceptable" is defined as "Able to be agreed on; suitable . . . adequate; satisfactory . . . able to be tolerated or allowed . . . ." The Court finds that these definitions further highlight the fact that Mr. Louk did not "finish" the 2013–2014 school year, and his suspension without pay illustrates that his performance was not "tolerated or allowed."[31]

31. The Grievance Board reasoned that Mr. Louk could not have been under a probationary contract because he was not notified of the status of his contract.[32] The Court finds this reasoning contrary to law and the facts. First, Mr. Louk was notified by letter on May 5, 2014, that his performance for the 2013–2014 school year was "unsatisfactory" in light of the April 28, 2014, incident. The letter was unequivocal:

---

[30] Decision at 14–15.

[31] Under W. Va. Code § 18A-4-8g(c)(2), service employees who are suspended without pay receive no seniority for the days on which they are suspended.

[32] Specifically, the Grievance Board reasoned, "Further, there has been no suggestion that Respondent informed Grievant that his contract for the 2014–2015 would be probationary because of his prior suspension, or conduct. The evidence presented suggests only that Respondent gave Grievant an employment contract as a regular bus operator for the 2014–2015 school year without any caveats." Decision at 14–15.

10

This is your first year of employment with the Braxton County Board of Education. Your evaluation for this school year is unsatisfactory. After having been employed by the Board for such a short period of time, I find your behavior to be totally unacceptable and dangerous to the students of Braxton County. In fact, the video reflects a young student exiting his seat, walking up the aisle to a location right beside the bus driver's seat and standing there. No one admonished him to return to his seat and he could have easily caused the bus to move, injuring the passengers and untold others who may have been in the path of the school bus.

...

Thus, Mr. Louk was aware that his year of employment was less than acceptable.

Second, under W. Va. Code § 18A-2-8a,

The superintendent at a meeting of the board on or before April 15 of each year shall provide in writing to the board a list of all probationary teachers that he or she recommends to be rehired for the next ensuing school year. The board shall act upon the superintendent's recommendations at that meeting in accordance with section one of this article. The board at this same meeting shall also act upon the retention of other probationary employees as provided in sections two and five of this article. Any such probationary teacher or other probationary employee who is not rehired by the board at that meeting shall be notified in writing, by certified mail, return receipt requested, to such persons' last known addresses within ten days following said board meeting, of their not having been rehired or not having been recommended for rehiring.

Here, the cause for Mr. Louk's suspension occurred on April 28, 2014—after the April 15 deadline. Thus, the Board had no reason to consider non-renewing Mr. Louk's probationary contract at that time. Further, the Board declined to terminate his contract at the May 12, 2014, Board meeting. Thus, notice of his probationary contract was unnecessary under this section because (1) he was not being terminated and (2) his name was not on the list of probationary employees as the incident occurred after the April 15 deadline. Further, the following year, after Mr. Louk's April 28, 2014, incident, after the State Superintendent's letter highlighted several issues with Mr. Louk's performance during the 2013–2014 school year, and after Mr. Louk had

11

not worked one day during the 2014–2015 school year due to his lacking certification, the Board had sufficient cause to non-renew his contract, which the Board did. In April 2015, the Board was not required to follow the procedures for terminating a continuing contract because, as explained above, Mr. Louk had not completed a full year of acceptable service in the 2013–2014 school year and, therefore, did not have a continuing contract during the 2014–2015 school year. Thus, the Court finds no merit in the Grievance Board's reasoning that lack of notice to Mr. Louk regarding his probationary status equates to Mr. Louk having a continuing contract for the 2014–2015 school year.

32. Lastly, the Court finds the Grievance Board erred for finding, or at least implying, that Mr. Louk was punished twice for the April 28, 2014, incident. The Grievance Board *Decision* states, "The hearing on the nonrenewal of Grievant's contract was conducted on April 28, 2015. At this hearing, Respondent indicated that the nonrenewal was related to Grievant's conduct on April 28, 2014, **even though Respondent had already disciplined Grievant for such in May 2014.**"[33] Under West Virginia law, non-renewals are not considered disciplinary actions, regardless of the reasons for the non-renewal.[34]

33. Upon *de novo* review, the Court finds and concludes that Mr. Louk is not entitled to reinstatement because Mr. Louk did not complete a year of acceptable service during the 2013–2014 school year. The Court finds and concludes that the Grievance Board's *Decision* is clearly wrong in view of the reliable, probative, and substantial evidence on the whole record. The Court finds and concludes that the *Decision* is contrary to law and is an abuse of discretion. Having found that Mr. Louk is not entitled to reinstatement, the Court finds it unnecessary to address whether the Grievance Board erred in offsetting Mr. Louk's back wages.

---

[33] Decision at 10 (emphasis added).
[34] *See* Decision at 11.

12

## DECISION

Accordingly, the Court does **REVERSE** the Grievance Board *Decision* dated October 15, 2015. There being nothing further, the Court does **ORDER** that this matter be **DISMISSED** and **STRICKEN** from the docket of the Court. The Clerk is **DIRECTED** to send a certified copy of this *Final Order* to the parties and counsel of record.

**ENTERED** this 29 day of March 2016.

_____

**Louis H. Bloom, Judge**

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, SS
I, CATHY S. GATSON, CLERK OF CIRCUIT COURT OF SAID COUNTY
AND IN THE STATE DO HEREBY CERTIFY THAT THE FOREGOING
IS A TRUE COPY FROM THE RECORDS OF SAID COURT
CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

13

## CERTIFICATE OF SERVICE

I, John Everett Roush, Esq., counsel for the Petitioner, hereby certify that I have filed the original and five copies of the foregoing "Notice of Appeal to the West Virginia Supreme Court of Appeals Filed on Behalf of Petitioner Steven Louk" on the following by hand delivery, this the 29th day of March, 2016 to:

> Rory L. Perry, II, Clerk of the Court
> West Virginia Supreme Court of Appeals
> State Capitol Complex
> 1900 Kanawha Boulevard East
> Charleston, WV 25305

Further, I John Everett Roush, Esq., counsel for Petitioner, certify that I have served a true copy of the foregoing "Notice of Appeal to the West Virginia Supreme Court of Appeals Filed on Behalf of Petitioner Steven Louk" on the following by placing the same in a properly addressed envelope, First Class Postage Prepaid, in the United States Mails, on this the 29th day of March, 2016, to:

> Richard Boothby, Esq.
> Bowles Rice, LLP
> Post Office Box 49
> Parkersburg, West Virginia 26102-0049
>
> Cathy Gatson, Clerk
> Circuit Court of Kanawha County
> Kanawha County Judicial Annex
> 111 Court Street
> Charleston, WV 25301

John Everett Roush, Esq.
Legal Services
West Virginia School Service Personnel Association
1610 Washington Street East
Charleston, WV 25311
Telephone # 304-346-3544
State Bar ID # 3173